1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11  | JEREMIAH LEE MAY, an individual; | No.  2:12-cv-01791-MCE-DAD |

SCOTT LAWRENCE MAY, an

12  individual; GAVIN ROYD MAY, an
individual; and RUSSELL LANE, an

13  individual,

14                  Plaintiffs,

15          v.                                **MEMORANDUM AND ORDER**

16  RONALD LEE HAAS, an individual;
SCHNEIDER NATIONAL CARRIERS,

17  INC., an unknown corporation; and
DOES 1 through 40, inclusive,

18

19                  Defendants.

20          Through the present lawsuit, Plaintiffs Jeremiah Lee May, Scott Lawrence May,

21  Gavin Royd May, and Russell Lane ( collectively, "Plaintiffs") seek monetary damages

22  from Defendants Ronald Lee Haas ("Haas") and his employer Schneider National

23  Carriers ("Schneider") in connection with an automobile accident that occurred on

24  July 30, 2011, in the State of Nevada.  Presently before the Court is a Motion to Transfer

25  Venue pursuant to 28 U.S.C. § 1404(a), filed by Defendant Schneider.  (ECF No. 24.)

26  For the reasons set forth below, Schneider's Motion is GRANTED.[1]

27  _____

28          [1] Because oral argument would not be of material assistance, the Court ordered this matter
submitted on the briefing.  E.D. Cal. R. 230(g).

1

2

**BACKGROUND**

3    On May 29, 2012, Plaintiffs filed this action against Defendants Haas and

4 Schneider in state court alleging causes of action for wrongful death and negligence.

5 (ECF No. 1.)  On July 6, 2012, Schneider removed the action to this Court, asserting

6 diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Id.)  Subsequently, Plaintiffs filed a

7 Motion to Remand the action to state court pursuant to 28 U.S.C. § 1441(a).  (ECF

8 No. 9.)  The Court denied Plaintiffs' Motion to Remand in its October 15, 2012 Order.

9 ECF No. 16.)  On April 29, 2013, Schneider filed the instant Motion to Transfer Venue

10 seeking transfer to the United States District Court for the District of Nevada, Northern

11 Division in Reno.  (ECF Nos. 21-24.)

12    The accident which gave rise to Plaintiff's lawsuit happened on July 30, 2011, in

13 the State of Nevada.  (Compl. ¶¶14-18.)  According to the Complaint, Plaintiffs' decedent

14 George May ("Decedent") was driving his automobile eastbound on Interstate Route 80

15 when the automobile became disabled near Humboldt mile marker 31.  (Id. ¶ 16.)  While

16 Decedent sat inside his stalled vehicle, a truck owned by Defendant Schneider and

17 operated by Defendant Haas collided with Decedent's vehicle.  (Id. ¶ 18).  According to

18 Plaintiffs, Defendant Haas's negligence was the cause of the accident which led to

19 Decedent's death.  (Id. ¶ 21.)  However, according to Schneider, the Nevada Highway

20 Patrol ("NHP") report did not indicate that an autopsy was performed, and Decedent's

21 cause of death remains unknown.  (Decl. of Stephen L. Dahm in Supp. of Mot. to

22 Transfer Venue ("Dahm Decl."), filed on April 29, 2013, ECF No. 22, ¶ 17.)  While it is

23 possible that Decedent died due to the collision, Schneider intends to investigate the

24 cause of Decedent's death.  (Id.)

25    At the time of his death, Decedent resided in Golconda, Humboldt County,

26 Nevada, which is about 20 miles west of the location of the accident.  (Compl. ¶ 1; ECF

27 No. 23 at 2; Dahm Decl. Ex. A.)

28 ///

1  Plaintiffs Jeremiah Lee May, Scott Lawrence May and Gavin Royd May are residents of

2  Colorado, and Plaintiff Russell Lane is a resident of Kansas.  (Compl. ¶¶ 2-5.)  Prior to

3  his death from cancer in October of 2012, Defendant Haas was a resident of

4  Sacramento County, California.  (Compl. ¶ 6; Dahm Decl. ¶ 4.)  Defendant Schneider is

5  a Nevada corporation with its principal place of business in Wisconsin.  (Compl. ¶ 7;

6  ECF No. 23 at 6.)  Schneider maintains a French Camp distribution center in California,

7  which was the starting point of Haas's journey on the day of the accident.  (ECF No. 25

8  at 2.)

9       The determinative facts for a change of venue analysis in this case revolve

10  primarily around the potential witnesses.  The parties agree that the only percipient

11  witnesses to the accident, Decedent and Defendant Haas, are dead.  (ECF No. 23 at 3;

12  ECF No. 25 at 2.)  However, there are many other witnesses to the events before and

13  after the accident, as well as witnesses to the health of Decedent and Defendant Haas

14  prior to the accident, whose testimony the parties expect to use at trial.  In particular,

15  numerous Sheriff's deputies, rescue officers, and firefighters who responded to the

16  scene of the accident live and work in Humboldt County, Nevada.  (Dahm Decl.

17  ¶¶ 10-18.)  Further, Defendants intend to call Michael J. Hornbarger, who supposedly

18  saw a car stopped in the right lane of Interstate 80 just east of the Golconda on-ramp in

19  Nevada with no lights on except for an interior light on the floor about 15 minutes prior to

20  the accident.  (Id. ¶ 9.)  Mr. Hornbarger resides in Winnemucca, Nevada.  (Id.)

21  Additionally, Defendants intend to call Decedent's girlfriend/caretaker Shellie McDowall

22  who, according to the NHP report, stated that Decedent had been suffering from tumors

23  on his frontal lobe and was not feeling well just hours prior to the accident.  (Id. ¶ 6.)

24  Ms. McDowell also resides in Nevada.  (Id.)

25       On the other side, Plaintiffs intend to call several California-based witnesses who

26  can attest to Haas's terminal cancer and the potential impact of Haas's illness on his

27  ability to operate his vehicle on the day of the collision.

28  ///

1   (Decl. of Derek Scott in Supp. of Pls.' Opp'n to Mot. to Transfer Venue ("Scott Decl."),

2   filed on May 31, 2013, ECF No. 25-1, ¶ 3.)  In particular, Plaintiffs expect to call Haas's

3   treating physicians Dr. Laptalo, Dr. Jones, and Dr. Goldsmith who can "offer opinion as

4   to both his condition at the time of treatment and its likely impact on him on the day of

5   the collision."  (Id.)  Plaintiffs also expect to use the testimony of Haas's relatives, friends

6   and colleagues who can provide information "as to the general impacts of [Haas's]

7   illness."  (Id.)

8

9                          **STANDARD**

10

11      "For the convenience of parties and witnesses, in the interest of justice, a district

12   court may transfer any civil action to any other district or division where it might have

13   been brought."  28 U .S.C. § 1404(a).  The purpose of Section 1404(a) is to "prevent the

14   waste of time, energy, and money and to protect litigants, witnesses and the public

15   against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S.

16   612, 616 (1964) (internal quotation marks omitted).  On a motion to transfer venue, the

17   moving party must make "a strong showing of inconvenience to warrant upsetting the

18   plaintiff's choice of forum."  Hope v. Otis Elevator Co., 389 F. Supp. 2d 1235, 1243 (E.D.

19   Cal. 2005) (quoting Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843

20   (9th Cir.1986)).  The Court has discretion in deciding whether such transfer is warranted

21   based on an "individualized, case-by-case consideration of convenience and fairness."

22   Van Dusen, 376 U.S. at 622.

23      Once the court determines a case could have been brought before the proposed

24   transferee court, it must consider a number of private and public factors relating to the

25   interests of the parties and the judiciary.

26   ///

27   ///

28   ///

1   For example, the court may consider: (1) the plaintiff's choice of forum, (2) respective

2   parties' contacts with the forum, (3) contacts relating to the plaintiff's cause of action in

3   the forum, (4) the cost of litigation in either forum, (5) the ease of access to sources of

4   proof, (6) the complexity of the governing law, (7) the availability of compulsory process

5   to compel attendance of unwilling non-party witnesses, and (8) other factors that, in the

6   interest of justice, impact the convenience or fairness of a particular venue.  Jones v.

7   GNC Franchising, Inc., 211 F.3d 495, 498–499 (9th Cir. 2000).

8

9                                    **ANALYSIS**

10

11          As stated above, in determining the propriety of transfer under 28 U.S.C.

12   § 1404(a), the Court must first consider whether the proposed transferee district, here

13   the U.S. District Court for the District of Nevada in Reno, Nevada, is one in which

14   Plaintiffs' action could originally have been brought.  More specifically, the transferee

15   court must: (1) be able to exercise personal jurisdiction over Defendants; (2) have

16   subject matter jurisdiction over Plaintiffs' claims; and (3) be a proper venue.  See

17   Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960).  In the present action, the parties do not

18   dispute that this action could have been brought in the District of Nevada, and that

19   Defendants are subject to personal jurisdiction in that district.  Thus, the Court will turn to

20   the remaining considerations that must be weighed in determining whether a transfer

21   from California to Nevada is appropriate.  However, rather than focusing on all

22   potentially relevant factors, the Court will limit its analysis to the factors that are of

23   significance in this case and those addressed by the parties.

24

25          A.      **Convenience of the Parties**

26

27          In the present case, the factor of convenience of the parties involves balancing

28   Plaintiffs' choice of forum and the parties' contacts with the forum.

1    While a plaintiff's choice of forum should ordinarily be given "substantial weight,"

2    N. Acceptance Trust 1065 v. Gray, 423 F.2d 653, 654 (9th Cir. 1970), "[i]f the operative

3    facts have not occurred within the forum of original selection and that forum has no

4    particular interest in the parties or the subject matter, the plaintiff's choice is entitled only

5    to minimal consideration." Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954

6    (9th Cir. 1968); see also Genimi Capital Group v. Yap Fishing Corp., 150 F.3d 1088,

7    1091 (9th Cir. 1998) (the weight given to plaintiff's choice of forum is diminished when

8    the plaintiff resides outside the chosen forum).  Here, no Plaintiff resides in California,

9    and the accident giving rise to Plaintiffs' instant lawsuit occurred in Nevada.  The State of

10   California does not appear to have any particular interest in adjudicating this case as the

11   only California resident involved, Defendant Haas, is deceased.  On the other side,

12   Nevada's interest in resolving the parties' instant dispute is much stronger given that this

13   case involves the death of one of its citizens on one of its highways.

14        Plaintiffs also contend that their choice of forum should be given substantial

15   weight because they "are of limited means while Defendant Schneider is a national

16   trucking company of substantial means," and that "Schneider's relative financial

17   resources and ability to easily handle this case in this court weighs heavily against

18   transfer."  (ECF No. 25 at 5.)  Although a party's financial situation is relevant in the

19   venue transfer analysis, it is not entitled to great weight.  Burke v. USF Reddaway, Inc.,

20   2013 WL 85428, at *2 (E.D. Cal. Jan. 8, 2013).  Unless Plaintiffs can establish financial

21   inconvenience, Plaintiffs' "choice of forum receives no greater weight than that afforded

22   by the general . . . presumption in favor of every plaintiff's choice."  Id. at *3.  Since

23   Plaintiffs do not reside in California, the Court fails to see how litigating this case in

24   Nevada would be more expensive or less convenient for Plaintiffs than litigating it in

25   California.

26   ///

27   ///

28   ///

1    In sum, because Plaintiffs chose a forum that they have no meaningful connection

2  to, the State of California has no particular interest in the subject matter of this litigation,

3  and because there is no indication that the chosen forum is particularly convenient for

4  Plaintiffs, Plaintiffs' choice of forum is given little weight.  However, Schneider – which is

5  a national company with substantial presence in California – also has failed to

6  demonstrate that it would be greatly inconvenienced by having to litigate this case in

7  California.  Because the burden is on Schneider, as a moving party, to demonstrate

8  inconvenience, this factor weighs slightly against the transfer.

9

10    **B.    Convenience of the Witnesses**

11

12    The convenience of non-party witnesses is usually the most important factor in

13  the venue transfer analysis.  Florens Container v. Cho Yang Shipping, 245 F. Supp. 2d

14  1086, 1092 (N.D. Cal. 2002).  In considering this factor, courts look to "who the

15  witnesses are, where they are located, what their testimony will be, and why such

16  testimony is relevant."  Id. at 1092-93.  "The party seeking a transfer cannot rely on

17  vague generalizations as to the convenience factors.  The moving party is obligated to

18  identify the key witnesses to be called and to present a generalized statement of what

19  their testimony would include."  Id. at 1093; see also Tittl v. Hilton Worldwide, Inc.,

20  2013 WL 1087730, at *4 (E.D. Cal. Mar. 14, 2013) ("[T]o show inconvenience for

21  witnesses, 'the moving party should state the witnesses' identities, locations, and

22  content and relevance of their testimony.'").

23    In the present case, Schneider has carried its burden of demonstrating that

24  litigating this case in California would inconvenience many out-of-state witnesses whose

25  testimony would be relevant and important at trial.  Schneider's moving papers list

26  potential witnesses by name, state their presumed location, and describe what each

27  person will contribute to the factfinding process.

28  ///

1    In particular, according to the Declaration of Schneider's counsel Stephen Dahm,

2    numerous witnesses of the aftermath of the fatal collision at issue, including the first

3    responders, paramedics, firefighters, and police investigators, reside or work in the State

4    of Nevada.  (Dahm Decl. ¶¶ 10-18.)  Further, potential witness Michael J. Hornbarger,

5    who saw an older car stopped in the right-hand lane of Interstate 80 just east of the

6    Gonconda ramp with no light on about fifteen minutes before the accident, also resides

7    in Winnemucca, Nevada.  (Id. ¶ 9.)  All these witnesses are likely to possess information

8    which would be vital in determining the issues of liability and causation.

9           Additionally, the issues of the cause of Decedent's death and Plaintiffs' damages

10   will likely require evidence regarding Decedent's health during the relevant time period.

11   Decedent's girlfriend and caretaker Shelley McDowell, who can testify regarding

12   Decedent's physical and mental health immediately before the accident, is believed to

13   reside in Golconda, Nevada.  (Id. ¶ 6.)  Decedent's physicians and his medical records

14   are also likely located in Humboldt County, Nevada, since Decedent resided in that area.

15   (Id. ¶ 7.)  Thus, numerous non-party witnesses who can testify on the issues of duty,

16   breach, causation and damages live or work in Humboldt County, Nevada, where the

17   accident occurred.

18          For their part, Plaintiffs assert that several California-based witnesses will be

19   inconvenienced if this case is transferred to Nevada.  (ECF No. 25 at 2.)  In particular,

20   Plaintiffs assert that the "testimony [of] medical professionals treating Mr. Haas will be

21   critical in establishing the impact of his terminal cancer on his ability to properly control

22   his semi truck."  (Id. at 7.)  According to Plaintiffs, all of Haas's doctors, including

23   Dr. Laptalo, Dr. Jones, and Dr. Goldsmith, reside in or around Sacramento, California.

24   (Scott Decl. ¶ 3.)  However, the record demonstrates that Haas did not have any

25   treatment pertaining to his cancer and did not see any healthcare providers from April

26   2010 until March 2012.  (Haas Dep., ECF No. 25-2, at 57:22-58:4, 60:2-7.)

27   ///

28   ///

8

1   Thus, any testimony regarding Haas's condition at the time of the July 2011 accident

2   that Haas's physicians can provide as percipient witnesses of the relevant events would

3   be, at best, speculative.  To the extent that Plaintiffs intend to call Haas's doctors as

4   expert witnesses, the convenience of expert witnesses is given minimal, if any, weight in

5   determining if transfer of venue is appropriate.  See Williams v. Bowman, 157 F. Supp.

6   2d 1103, 1108 (N.D. Cal. 2001).  However, Haas did receive an FMCA screening at

7   Sacramento Occupational Medical Group approximately one month prior to the accident

8   (see Haas Dep. at 70:6-21), which is potentially more relevant to Haas's condition at the

9   time of the accident than testimony by his cancer physicians.  Additionally, Haas's wife

10  and his other relatives, friends and colleagues, all of whom reside in California, can

11  potentially testify as to the general impacts of Haas's cancer.  (Scott Decl. ¶ 3.)

12          Finally, according to Plaintiffs, "Mr. Haas's co-workers, supervisors, and

13  mechanics working on the semi, will also largely be found in California."  (ECF No. 25 at

14  7.)  However, Plaintiffs do not specify who in particular could provide this information

15  beyond noting that "Mr. Haas worked from the French camp distribution center of

16  Schneider and left from there on the day of the incident."  (Id.)  More importantly, Haas's

17  co-workers and supervisors are likely Schneider's employees, and thus Schneider has

18  some means to secure that these witnesses attend and give testimony in a trial in

19  Nevada.  See Saca v. Molyneux, 2007 WL 2769443, at *2 (E.D. Cal. Sep. 19, 2007); see

20  also Metz v. U.S. Life Ins. Co. in City of New York, 674 F. Supp. 2d 1141, 1147 (C.D.

21  Cal. 2009) ("[C]onvenience of employees is less important than the convenience of

22  non-party witnesses.") (quotation omitted).  Schneider, however, has no means by which

23  to compel non-party witnesses in Nevada to appear and give testimony at a trial in

24  Sacramento, California.

25          In sum, since potential witnesses reside in both California and Nevada, some

26  witnesses will be inconvenienced regardless of whether Schneider's instant motion is

27  granted.

28  ///

1    However, upon balancing the number of witnesses affected and the relevance and

2    quality of their expected testimonies, the Court finds that the convenience of non-party

3    witnesses will be best served if venue is transferred.

4

5         C.    Interests of Justice

6

7         In the present case, the factors of availability of compulsory process and ease of

8    access to evidence are weighed to determine if venue transfer would serve the interests

9    of justice.

10

11        1.    Compulsory Process

12

13        The "availability of process to compel the testimony of important witnesses is an

14   important consideration in transfer motions."  Arrow Elecs., Inc. v. Ducommun Inc.,

15   724 F. Supp. 264, 266 (S.D.N.Y. 1989).  According to Federal Rule of Civil Procedure

16   45, a subpoena may be served "within the district of the issuing court" or "outside that

17   district but within 100 miles of the place specified for the deposition, hearing, trial,

18   production, or inspection."  Fed. R. Civ. P. 45(b)(2)(A)-(B).  Thus, witnesses who are

19   outside of the jurisdiction of the court and are more than 100 miles away from the

20   courthouse cannot be compelled to testify at trial.

21        In the present case, Plaintiffs intend to use witnesses who reside in or near

22   Sacramento, California, which is within this Court's jurisdiction and thus within the

23   subpoena power of this Court.  Schneider, however, lists many Nevada residents as

24   potential witnesses, all of whom reside more than 100 miles away from Sacramento,

25   California. [2]

26   _____
          [2] Schneider filed a Request for Judicial Notice asking the Court to take judicial notice of the
27   following distances to the federal courthouse in Sacramento is: 137 miles from Sparks; 296 miles from
     Winnemucca; 315 miles from Golconda; and 350 miles from Battle Mountain, all of which are in Nevada.
     (ECF No. 21.)  The Court finds that these driving distances can be accurately and readily determined from
28   sources whose accuracy cannot reasonably be questioned and, in the absence of any opposition from

1   As with the convenience of witnesses factor, when taking into account the number of

2   witnesses affected and the relative importance of their testimony, the Court finds that the

3   interests of justice will be best served if venue is transferred.

4

5                              **2.      Ease of Access to Evidence**

6

7            Relevant evidence in the present case primarily encompasses documents that

8   each party intends to request.  Schneider avers that Decedent's medical condition on the

9   day of the collision is relevant to determining the cause of his death and the amount of

10  damages, and intends to subpoena medical records from Decedent's healthcare

11  providers for a "reasonable period of time" before the collision to determine Decedent's

12  health and life expectancy.  (Dahm Decl. ¶ 7.)  According to Schneider, Decedent's

13  healthcare providers and his medical records are located in or near Golconda, Nevada.

14  (Id.)  Additionally, Schneider contends that Decedent's income records will be crucial to

15  determining if and to what extent Plaintiffs have been deprived of Decedent's financial

16  contributions.  (Id. ¶ 8.)  Schneider believes that the custodians of these records are also

17  located in or near Golconda, Nevada.  (Id.)  For their part, Plaintiffs assert that evidence

18  related to Haas's medical condition and mechanical condition of his truck and trailer are

19  located in California.  (ECF No. 25 at 4.)

20           As other courts have noted, the "ease of access to documents does not weigh

21  heavily in the transfer analysis, given that advances in technology have made it easy for

22  documents to be transferred to different locations."  Metz, 674 F. Supp. 2d at 1149

23  (quotation omitted).  "The reality of electronic communication and transmission at least

24  dilutes the weight given to this convenience factor."  Luchini v. CarMax, Inc., 2012 WL

25  2401530, at *6 (E.D. Cal. June 25, 2012).  Therefore, any difficulties in accessing the

26  evidence must be more significant than those that can be overcome by the availability of

27  electronic data transfer.

28  Plaintiffs, takes judicial notice of these distances pursuant to Federal Rule of Evidence 201(b).

1   Neither side has presented evidence that their desired access to records will be

2   restrained by some factor other than distance, which can be alleviated via electronic

3   data transfer.  As to the mechanical records for Haas's vehicle, obtaining those records

4   should not present any difficulty for Plaintiffs because all maintenance and repair records

5   are likely in Schneider's possession and thus should be available to Plaintiffs upon

6   request.  Accordingly, the ease of access to evidence factor does not carry much weight

7   in the Court's venue transfer analysis.

8           Upon balancing the relevant factors, the Court finds that the interests of justice

9   would be best served if this case is litigated in the State of Nevada because the accident

10  occurred in Nevada, most witnesses reside in Nevada, it would be equally convenient for

11  the parties to litigate in Nevada, and the State of Nevada has a greater interest in

12  resolving a case involving the death of one of its citizens on one of its highways.

13  Accordingly, Defendant Schneider's Motion to Transfer Venue is GRANTED.

14

15                                      **CONCLUSION**

16

17          For the reasons set forth above, Defendant Schneider's Motion to Transfer Venue

18  (ECF No. 24) is GRANTED.  The Clerk of the Court is directed to transfer this case to

19  the United States District Court for the District of Nevada in Reno, Nevada.

20          IT IS SO ORDERED.

21  Dated:  August 2, 2013

22

23

24  _____

25  MORRISON C. ENGLAND, JR., CHIEF JUDGE
    UNITED STATES DISTRICT COURT

26

27

28